KAZEN, District Judge,
dissenting:
As the majority opinion reflects, Burlington Northern designed the 1991 Separation Pay Plan (“the Plan”) to entice as many employees as possible to accept voluntary separation. To that end, the Summary Plan Description (“SPD”) explicitly stated that:
“The company is offering this Plan in an effort to reduce its expenses due to business conditions. At this time, the company’s management has not decided whether there will be any additional voluntary separation plans. However, management has decided that if there are any additional plans, the benefits would not be as good as those contained in this plan.”
The majority concludes that in making this representation, Burlington Northern did not breach its fiduciary duty as an ERISA plan administrator because the statements were true when made. That holding initially was made by the district court as a matter of law in a summary judgment proceeding. I believe that there is a genuine fact dispute on this issue. The evidence is that Don Scott alone made the quoted decision that there would be no better benefits in the future. There is also evidence that all important decisions were to be reviewed by other members of senior management. In deposition testimony, Scott recalled a presentation about the Plan to senior management in which he explained “that what we were trying to do was to offer a comfort to employees that if they took this benefit, that it was going to be the best available, that there wasn’t going to be another plan immediately behind it of a higher value.” On the other hand, the district court acknowledged testimony of other members of the management team “that they did not discuss, review, or approve the verbiage” included in the 1991 Plan. Nevertheless, the district court held, and the majority apparently agrees, that Scott’s unilateral decision can truthfully be labeled as a decision by “management” under the test that a plan need be considered only by “those members of senior management with responsibility for the benefits area of the business, and who would ultimately make recommendations to the board regarding benefits operations.”
The quoted language is taken from the opinion in Fischer v. Philadelphia Electric Company, 96 F.3d 1533, 1540 (3rd Cir. 1996). That case dealt with the common scenario of complaints by employees that their employer was actually giving “serious consideration” to a retirement plan while either denying or failing to disclose that circumstance to the employees. The Fischer court was concerned with when a future plan is under “serious consideration.” Fischer recognized that typically only the Board of Directors can actually implement changes in a benefit package, but concluded that for the “serious consideration” test, it is only necessary that the plan is being considered by those members of senior management responsible for making recommendations to the Board.
In my view, there is a qualitative distinction between determining whether someone in high management is “seriously considering” a future plan and determining whether a company actually has made an important unequivocal decision about a feature of an already promulgated plan. In the face of deposition testimony by senior management members that they never even saw, much less discussed, the SPD language quoted above, it cannot be *515 said as a matter of law that “management has decided” that no future plan would have better benefits. The truth of that representation should be decided by the fact finder.
I also disagree that the plaintiffs cannot sue to recover benefits due under the 1991 Plan. As stated in the majority opinion, the SPD is binding and controls over any conflict with the Plan itself. Further, any ambiguities in the SPD must be resolved in the employees’ favor. The majority holds that although Burlington Northern is bound by statements in the Plan documents, it is “not bound by silence,” citing Wise v. El Paso Natural Gas Co., 986 F.2d 929 (5th Cir.1993). The precise language from the Wise opinion is: “While clear and unambiguous statements in the summary plan description are binding, the same is not true of silence.” Id. at 938. The instant case does not involve silence but rather a clear and unambiguous statement, namely that no future plan would have better benefits. The majority states that because the Plan is silent as to a potential remedy, it is somehow unenforceable. The remedy is provided by statute itself, 29 U.S.C. § 1132(a). The majority also characterizes the plaintiffs’ argument as being that management had committed “never to change the decision announced in the Q & A” and that this assumption was belied by other language giving the Company the right to amend and/or terminate the Plan at any time for any purpose. Plaintiffs do not dispute Burlington Northern’s right to amend the 1991 Plan, but Burlington Northern never attempted to exercise that right. Moreover, the plaintiffs do not contend that Burlington Northern could never again design a voluntary separation plan. Indeed, the disputed language in the SPD specifically left open the option of future plans. What is at issue is a positive, unequivocal statement that “management has decided that if there are any additional plans, the benefits would not be as good as those contained in this plan.” The majority again relies on Wise for the proposition that “contractual vesting is a narrow doctrine.” 986 F.2d at 938. In Wise, the company had issued SPDs as early as 1977 but in 1985 issued new SPDs which, for the first time, explicitly stated that the company had the right to alter, amend, or otherwise change the plan. In October 1985, the company announced that it would continue previous benefits only for employees who retired before March 1, 1986, and anyone retiring after that day would forfeit company-paid coverage. Id. at 933. -The litigation was brought by employees who retired after the cutoff date of March 1, 1986, contending that their rights in previous plans had somehow vested earlier. Wise was specifically concerned only with “employees who had not retired as of the date of the disputed change.” Id. at 936. Under the instant plan, employees could elect to participate between June 17 and August 1, 1991. If these plaintiffs had attempted to participate after that time, or if the company had attempted to amend the Plan sometime before the plaintiffs made their election, there might be a legitimate issue of vesting rights. As it is, however, there was no amendment to the Plan at any time, and there is no doubt that the plaintiffs voluntarily left their employment while the language at issue was in effect.
For the foregoing reasons, I respectfully dissent.